123 N.J. Super. 14 (1973)
301 A.2d 204
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH COCUZZA, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division (Criminal).
Decided February 23, 1973.
*15 John A. Matthews, III, Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
*16 Harvey Weissbard for defendant (Messrs. Isles and Weissbard, attorneys).
SCALERA, J.C.C.
Defendant Joseph Cocuzza is charged with conspiracy to operate a lottery and to violate the laws pertaining to gambling, conspiracy to obstruct justice and obstruction of justice, conspiracy to threaten a life and threatening to take a life. Eighteen codefendants were indicted for sundry violations of the laws pertaining to gambling.
The indictments find origin in a series of five wiretap orders issued pursuant to the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq.
On December 13, 1971 the Essex County assignment judge authorized members of the Essex County Prosecutor's office and members of the City-County Task Force to intercept wire communications of two telephones listed to one "M. Mazzeo" (a codefendant) at 61 Plymouth Street, Newark, New Jersey. The order issued as a result of the application of an investigator in the Essex County Prosecutor's office. His affidavit indicated the use of those telephone facilities to foster illegal gambling activities. The written authorization required by N.J.S.A. 2A:156A-8 was signed, not by the county prosecutor himself, but rather by an assistant prosecutor.
On December 17, 1971 a second order authorized a wiretap of a telephone listed to one "W. Crecca" (a codefendant), Apt. B, 343 Branch Brook Drive, Belleville, New Jersey. The sworn application was based on information emanating from the December 13 wiretap order. On December 21, 1971 a third wiretap order permitted interceptions of a different phone issued to one "Carl Romano" (a codefendant), at the same address as indicated in the December 17 wiretap order. Again, the requisite information had been obtained from the monitoring authorized by the December 17 wiretap. On December 30, 1971 the assignment judge approved an extension *17 of the initial December 13 wiretap order. On January 3, 1972 a final order authorized a wiretap of a telephone listed to one "M. Hlavenka" (a codefendant), Apt. 94, 352 Hoover Avenue, Bloomfield, New Jersey, based upon information obtained from the previously authorized wiretaps.
On January 8, 1973 an affidavit relating information secured from the various wiretaps in progress, resulted in the issuance of numerous search and arrest warrants which, when executed, resulted in multiple arrests. Defendant Cocuzza apparently was not involved in the arrests stemming from the execution of these warrants.
Defendant initially sought to suppress "any and all telephone communications intercepted pursuant to N.J.S.A. 2A:156A-1 et seq and all evidence derived therefrom," contending that the interceptions were in violation of the New Jersey wiretap statute and of his constitutional rights.
He then narrowed the scope of his attack. More particularly, he asserts that the December 13 wiretap was invalid because the written authorization required by N.J.S.A. 2A:156A-8 was signed by an assistant prosecutor instead of the county prosecutor himself. It is urged that the New Jersey wiretap statute prohibits such a delegation of authority to an nassistant prosecutor and, in the alternative, that such a statutory provision would be contrary to the Congressional mandate in the federal wiretap act, 18 U.S.C.A. § 2510 et seq. Moreover, he contends, the entire series of wiretap orders is "tainted," being necessarily based upon information secured from the defective initial wiretap order, and all information secured thereby must be suppressed as "evidence derived" from an illegal interception. N.J.S.A. 2A:156A-21. In further consequence of this, defendant asserts, the resultant search warrants and all evidence produced from their executions must be suppressed.
The historical development of permissible intrusion by law enforcement in the field of wiretapping is well documented. State v. Christy, 112 N.J. Super. 48 (Cty. Ct. 1970), Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, *18 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), fashioned the constitutional touchstone for future wiretaps by law enforcement agencies. Adherence to their mandates is a sine qua non of legitimate and constitutionally valid searches by such means. The United States Congress responded by enacting legislation to guide not only the Federal Government's activities in this sensitive area but also to permit the several states to adopt legislation workable on a local level but consonant with their decree. 1968 U.S. Code Cong. & Adm. News p. 2177 et seq.; 18 U.S.C.A. § 2510 et seq.; Blakey and Hancock, "A Proposed Electronic Surveillance Control Act"; 43 Notre Dame Lawyer 657 (1968); ABA Standards Relating to Electronic Surveillance (Approved Draft 1971 pp. 13 to 98). The New Jersey act was thus specifically "designed to meet the Federal requirements" N.J.S.A. Cum. Supp. 2A:156A-1 et seq., Statement.

I
Dealing with initial authorization of an interception, the act provides that
The Attorney General, a county prosecutor or the chairman of the State Commission of Investigation when authorized by a majority of the members of the commission of a person designated to act for such an official and to perform his duties in and during his actual absence or disability may authorize, in writing, an ex parte application to a judge designated to receive the same for an order authorizing the interception of a wire or oral communication by the investigative or law enforcement officers or agency having responsibility for an investigation. * * * [N.J.S.A. 2A:156A-8]
In contrast to the federal provision, our act requires that such authorization be "in writing." It is noted that the absence of a more precise manner and method of authorization in the federal legislation has led to different and sometimes conflicting interpretations. 18 U.S.C.A. § 2516(1); United States v. Doolittle, 341 F. Supp. 163 (M.D. Ga. *19 1972); United States v. Pisacano, 459 F.2d 259 (2 Cir.1972); United States v. Cantor, 328 F. Supp. 561 (E.D. Pa. 1971); United States v. Iannelli, 339 F. Supp. 171 (W.D. Pa. 1972); United States v. Aquino, 338 F. Supp. 1080 (E.D. Mich. 1972); United States v. La Gorga, 336 F. Supp. 190 (W.D. Pa. 1971); United States v. Casale, 341 F. Supp. 374 (M.D. Pa. 1972).
Congress, under 18 U.S.C.A. § 2516(2), requires that such state legislation limit those empowered to grant the initial authorizations to the "principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof * * *."
Recognizing the "awesome" power of modern electronic listening devices Congress clearly intended, as a matter of policy, to have control of that power remain within the "political process," United States v. Robinson, 468 F.2d 189 (5 Cir., 1972), reargument granted en banc 468 F.2d 194 (1972); 1968 U.S. Code Cong. & Adm. News pp. 2185-2187; ABA, Standards Relating to Electronic Surveillance (Approved Draft 1971, at 131-133); United States v. Narducci, 341 F. Supp. 1107 (E.D. Pa. 1972). Unquestionably, the purposeful design was to keep "decisions at the highest practicable policy-making levels" of government in all wiretap intrusions. Ibid; United States v. Lanza, 341 F. Supp. 405, 408 (M.D. Fla. 1972).
The New Jersey Legislature accordingly provided that a wiretap may be initiated, "in writing," only by the "Attorney General, a county prosecutor or the chairman of the State Commission of Investigation * * * or a person designated to act for such official and to perform his duties in and during his actual absence or disability." N.J.S.A. 2A: 156A-8.
The affidavit submitted by the county prosecutor here indicates that the assistant prosecutor who signed the authorization had orally advised him of the preparation of this application for the initial wiretap order and "briefly the facts upon which said application was to be based." The prosecutor *20 was thus "satisfied" to permit the application. The prosecutor was further advised that the wiretap should be executed "as soon as possible." Since he was "scheduled to attend a meeting outside of the office" he "told" the assistant prosecutor "to sign the authorization in [his] name" and apply for the wiretap order. Accordingly, the application and authorization which had been prepared for the county prosecutor's personal review and signature was, instead, reviewed and signed by the assistant prosecutor with the latter's signature.
Thus the question arises whether an assistant prosecutor may be individually authorized by the county prosecutor to so initiate a wiretap, within the meaning of N.J.S.A. 2A:156A-8.
The statutory language is susceptible of different interpretations. One may argue, as does the State, that the statute permits the prosecutor to delegate to an assistant the power to initiate a specific wiretap application. Defendant urges that it should be construed to mean that, only a person properly designated to assume all of the powers of the prosecutorial office during actual absence or disability of the prosecutor has power to so act.
A county prosecutor is appointed by the Governor with the advice and consent of the Senate. N.J. Const. (1947), Art. VII, § II, par. 1; N.J.S.A. 2A:158-1. Similarly, the other two officers empowered to initiate wiretaps under the statute, the Attorney General and the chairman of the State Commission of Investigation, are likewise appointed by the Governor with similar legislative involvement. N.J. Const. (1947), Art. V, § IV, par. 3; N.J.S.A. 52:9M-1.
Congress sought to distinguish the use of wiretaps from other search and seizure procedures then in use, both substantively and procedurally. It was deemed imperative that responsibility for formulation of law enforcement policy in this area be centralized in a publicly responsible official subject to the political process. U.S. Code Cong. & Admin. News, supra at p. 2185. Recognizing the different levels of *21 government activities in the several states, it limited the granting of such authority to the level of "the principal prosecuting attorney of any [state] political subdivision" 18 U.S.C.A. § 2516(2). In New Jersey such a "subdivision" reaches down to the county level only. U.S. Code Cong. & Admin. News p. 2187 (1968); United States v. Lanza, supra, 341 F. Supp. at 410. Accordingly, the county prosecutor may be so authorized.
In light of the Congressional concern for continued "political" control over the persons authorized to invoke wiretaps, as a matter of policy, the New Jersey statute cannot be construed to allow such delegation of authority to an assistant, United States v. Robinson, supra. This holds true even here where the assistant prosecutor was an integral part of the Organized Crime Strike Force. United States v. Narducci, supra.
The evils attendant upon a construction allowing delegation of responsibility to assistants on a case-to-case basis in the area of electronic "searches" are readily apparent. See United States v. Robinson, supra; United States v. Baldassari. 338 F. Supp. 904 (M.D. Pa. 1972). It would obviate the requirement that the value judgment necessary to initiate a wiretap be made by a public official politically appointed. Here the prosecutor himself never actually reviewed the file or underlying facts. His involvement was limited to a "brief" recital by an assistant. Cf. United States v. Narducci, supra. He never personally exercised the discretion reserved to his office alone. United States v. Robinson, supra.
It is therefore concluded that the wiretap order issued by the assignment judge on December 13, 1972 was fatally defective for failure of the prosecutor himself to properly authorize the application in writing pursuant to the requirements of N.J.S.A. 2A:156A-8. R. 3:5-7(d), rendering lawful mere "technical insufficiencies or irregularities" in obtaining search warrants, is inapposite. United States v. Narducci, supra, 341 F. Supp. at 1110. The requirement *22 in question cannot be construed to be a mere matter of form. Nor is a contrary result required by State v. Petillo, 61 N.J. 165 (1972). Petillo does not apply here where statutory prerequisites for initiating the application have not been fulfilled. Ibid.
It is argued by the State that such a restrictive interpretation renders totally inoperative that provision in the statute providing for exercise of wiretap authorization in the county prosecutor's "actual absence or disability." N.J.S.A. 2A:156A-8. The simple answer to such a contention is found in the provisions of N.J.S.A. 2A:158-9 wherein the Legislature has empowered local assignment judges to "appoint a fit person" to exercise "the powers of a prosecutor" in his absence. It is presumed that the Legislature was familiar with this statutory provision at the time it enacted the wiretap law provision in question, and it is our duty to give effect to both expressions of legislative will. State v. Federanko, 26 N.J. 119, 129 (1958). Undoubtedly, county assignment judges may designate any "fit person" to exercise the "powers of a prosecutor" during his absence. A standing order by each assignment judge appointing an "acting prosecutor" to act, as such absence or disability may occur, would facilitate resolution of the problem which occurred here and also operate to avoid the abuses feared by the lawmakers at both the federal and state levels.

II
Notwithstanding the merits of defendant's argument above, the State challenges the standing of this defendant to complain of the illegality of the December 13 wiretap order. It is argued that any defect in that order, fatal or not, is of no benefit to him on this motion since he is not an "aggrieved person" under the New Jersey Wiretap Act and cannot launch such an attack. N.J.S.A. 2A:156A-21 provides that:
*23 Any aggrieved person in any trial, hearing, or proceeding in or before any court or other authority of this State may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:
a. The communication was unlawfully intercepted;
b. The order of authorization is insufficient on its face;
c. The interception was not made in conformity with the order of authorization. * * *
An "aggrieved person" within this section is defined by N.J.S.A. 2A:156A-2(k):
"Aggrieved person" means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed.
Defendant has had the opportunity to listen to all tapes of intercepted communications. He has submitted an affidavit to establish that he was a "party" to several of the telephone calls intercepted on December 20, 1971. At the oral argument, however, defendant conceded that he was not "a party" to any of the wiretaps conducted pursuant to the December 13 order, the one under attack. If defendant was not a party to any of those interceptions, he must find standing to complain elsewhere in the statutory scheme, i.e., as "a person against whom the interception was directed."
New Jersey's provision concerning "aggrieved persons" is identical to the federal provision. 18 U.S.C.A. § 2510(11) and § 2518(10)(a). The legislative history again indicates the policy considerations which dictated limiting the persons eligible to invoke the statutory suppression sanction. 1968 U.S. Code Cong. & Adm. News, pp. 2179-2180; Blakey and Hancock, "A Proposed Electronic Surveillance Control Act," 43 Notre Dame Lawyer 657, 664 n. 14 (1968); ABA Standards Relating to Electronic Surveillance (Approved Draft 1971 at 116 to 118). The language is intended to reflect and be coextensive with the existing law in non-wiretap searches and seizures. Ibid; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. ed 2d 441 (1963); Jones v. United States, 362 U.S. 257, 80 *24 S.Ct. 725, 4 L. ed 2d 697 (1960); Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L. ed 1312 (1942).
An "aggrieved party" to a non-wiretap search and seizure has been broadly defined as one who has been the victim of the search and seizure as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search and seizure directed at someone else. State v. Doyle, 77 N.J. Super. 328, 344 (App. Div. 1962), cause remanded 40 N.J. 320 (1963), appeal after remand 42 N.J. 334 (1964); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L. ed 2d 697 (1960) Defendant here asserts that the evidence derived from the defective December 13 wiretap order taints the subsequent order directed "against" him.
In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L. ed 2d 176 (1969), the court dealt with the specific problem of what persons were entitled to such relief when evidence is obtained from illegal electronic eavesdropping. Defendants there urged that if the illegally obtained evidence was inadmissible against one defendant or coconspirator, it was also inadmissible against his codefendant or coconspirator. The Supreme Court, in rejecting this argument, reiterated the rule enunciated in Jones v. United States, supra, and cited Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.ed.2d 1154 (1968), and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. ed 2d 1247 (1968), as reaffirmance of these principles.
Thus, they reasserted that Fourth Amendment rights are "personal rights" and "may not be vicariously asserted." Alderman v. United States, 394 U.S. at 174, 89 S.Ct. 961. The court further noted that Congress, in enacting the federal wiretapping legislation with its definition of "aggrieved person," had deliberately chosen not to extend any further the exclusionary rule theretofore applicable to search and seizures generally. Alderman v. United States, 394 U.S. at 175, n. 9, 89 S.Ct. 961.
*25 Applying even the broad privilege reflected in the preexisting case law, defendant is not an "aggrieved person" within the meaning of N.J.S.A. 2A:156A-21, with standing to attack the wiretaps conducted pursuant to the order of December 13, 1971. He does not qualify as a "party" to any of those intercepted conversations, nor is there any evidence to indicate that he is a person "against whom" those interceptions were directed. Moreover, he may not "vicariously" assert such personal Fourth Amendment rights of codefendants who may have been affected by the defective initial wiretap order. (It is important to note that none of the other defendants in this action has launched any such attack).
Accordingly, although the initial wiretap order of December 13 was issued in violation of the statutory provisions, defendant is not entitled to the relief sought on this motion since he is without standing to do so under the wiretap statute. None of the interceptions directed against this defendant pursuant to the validly issued wiretap orders were "tainted" insofar as he may be concerned. Alderman v. United States, supra.
The motion is denied.