125 N.J. Super. 1 (1973)
308 A.2d 78
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROUMANIA EARL TRAVIS, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division (Criminal).
Decided June 4, 1973.
*4 Mr. R. Benjamin Cohen, Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney; Ms. Sara A. Friedman on the brief).
Mr. Myroslaw Smorodsky, Asst. Deputy Public Defender, for defendant (Mr. Stanley C. Van Ness, Public Defender, attorney).
SCALERA, J.C.C.
Defendant and three codefendants were indicted for violations of the gambling laws. The primary source of evidence stems from wiretaps executed pursuant to the provisions of the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq. Defendant seeks to suppress the use of the evidence so obtained. N.J.S.A. 2A:156A-21.
Joseph P. Lordi, Prosecutor of Essex County, prior to his vacation period of August 1972, specifically designated Leonard D. Ronco (Chief Trial Attorney) as "Acting Prosecutor, with all the powers and duties of the Office of Prosecutor" for that period. While the prosecutor was actually absent on vacation, the acting prosecutor authorized an application for the wiretap order in the instant case. The wiretap order was issued by a Superior Court judge empowered to sign such orders. N.J.S.A. 2A:156A-2(i).
Defendant contends that the wiretap order is invalid because the required written authorization was not executed by the county prosecutor himself but rather by an "acting" prosecutor, contrary to the provisions of N.J.S.A. 2A:156A-8. It is urged that this section, by its plain meaning, imposes a nondelegable duty upon the prosecutor to himself authorize all such applications, and that generally speaking a prosecutor lacks power to appoint an acting prosecutor. Moreover, she *5 asserts that if the New Jersey statute is construed to allow such delegation, such a provision is invalid, being in contravention of the federal wiretapping act which controls all local legislation on the subject. 18 U.S.C.A. § 2516 et seq; 1968 U.S. Code Cong. & Admin. News, 2187. Defendant argues that the rationale of State v. Cocuzza, 123 N.J. Super. 14 (Cty. Ct. 1973), a case recently decided by this court, also mandates this result.
The State maintains that the full-time prosecutor, although not specifically authorized by any statutory provision, has inherent power to appoint an acting prosecutor in such a situation. Further, it is contended that the New Jersey Wiretap Statute clearly allows delegation of the wiretap authority to an acting prosecutor who has assumed the full powers of the prosecutor's office during his actual absence as occurred here. The State also urges that State v. Cocuzza, supra, compels such a conclusion.

I
Dealing with the general problem of whether or not a prosecutor in New Jersey may appoint an acting prosecutor to act in his absence or disability, it appears that there is no statutory authority for such action. See N.J.S.A. 2A:158-1 et seq. The parties concede that there is no precedent in this State nor, indeed, in any other jurisdiction, to support the propositions advanced by either of them in this regard, absent specific legislative enactment. In contrast, the Attorney General is governed by statutory provisions concerning appointment of an Acting Attorney General. N.J.S.A. 52:17A-3.1. It may be noted that N.J.S.A. 2A:158-5 grants to county prosecutors the "same powers" as the Attorney General. Hence, one may argue, this includes the power to appoint an "acting" prosecutor. N.J.S.A. 52:17A-3.1; cf. State v. Winne, 12 N.J. 152, 164-166 (1953).
In Cocuzza this court noted that N.J.S.A. 2A:158-9 provides for appointment of a prosecutor by an assignment *6 judge in the absence of both the Attorney General and a county prosecutor. The State urges, and this court agrees, that that particular section was intended to apply to long-term situations such as would result from removal of the prosecutor or physical or mental inability on the part of the prosecutor to act. Its clear language does not contemplate action by the assignment judge where the absence or disability is a temporary or transient one, as frequently occurs in the ordinary course of business of such an office.
A county prosecutor is endowed with many powers to enable him to discharge his obligations as such. N.J.S.A. 2A:158-1 et seq. Even in the absence of any specific statutory provision it seems clear that a county prosecutor has the inherent power to designate an acting prosecutor to assume the duties of his office during absences or disabilities which routinely occur in such an office. The thrust of N.J.S.A. 2A:158-18, vesting in the prosecutor's broad powers to delegate duties to assistant prosecutors, would also seem to compel the conclusion that he has the power and discretion to appoint a qualified acting prosecutor to assume all of his duties and powers on such occasions. To hold otherwise would lead to the intolerable result that when relatively short absences or disabilities occur, the prosecutor's office would be left without someone filling its chief position. The desirability of continuity of the administration of prosecutorial business in a county requires that a prosecutor be so empowered.
In the instant case Prosecutor Lordi thus acted lawfully and properly in appointing Leonard D. Ronco as acting prosecutor during his vacation period. (The qualifications and ability of the appointee are not challenged.)

II
This court in State v. Cocuzza, supra, recently had occasion to review the history of the New Jersey Wiretap Act, born of the Federal Wiretap Act, 18 U.S.C.A. § 2510 *7 et seq., following the decisions of the United States Supreme Court in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It was therein observed that the New Jersey act was specifically designed to meet the federal requirements. State v. Cocuzza, supra, 123 N.J. Super. at 18.
The Cocuzza decision dealt specifically with an instance where the prosecutor had attempted to delegate authority to an assistant prosecutor to initiate a particular wiretap application without the prosecutor himself having fully reviewed and evaluated the necessity and desirability of invoking the wiretap procedure in that instance. This court, in denying that defendant's motion to suppress on other grounds, observed that the New Jersey Wiretap Act, "as a matter of policy," cannot be construed to allow delegation of such authority to an assistant on an ad hoc basis. Rather, it was noted, the New Jersey act requires that such delegation be restricted to instances in which the substitute prosecutor is a person empowered to exercise all of the duties of the prosecutor in and during the latter's actual absence or disability. N.J.S.A. 2A:156A-8. State v. Cocuzza, supra, at 21-22.
This court is now called upon to re-examine its previous construction of the last cited section of the New Jersey Wiretap Act and, more specifically, delineate under what circumstances a county prosecutor may lawfully delegate power to authorize wiretap applications.
The underlying objectives of the federal act and the abuses there sought to be avoided were set forth in the authorities cited in the Cocuzza decision and need no repeating here.
The federal wiretap act provides as follows:
(1) The Attorney General or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal Judge * * *
(2) The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such *8 attorney is authorized by a statute of that State to make application to a State court judge * * * may apply to such judge * * *. [18 U.S.C.A. § 2516]
Congressional intent was to "centralize areawide law enforcement policy" in this field at both the federal and local level. U.S. Code Cong. & Admin. News, supra, at 2185-2187. "States would be free to adopt more restrictive legislation ... but not less restrictive legislation." Ibid. at 2187.
New Jersey's Wiretap Act thus provides in this area that
The Attorney General, a county prosecutor or the chairman of the State Commission of Investigation when authorized by a majority of the members of that commission or a person designated to act for such an official and to perform his duties in and during his actual absence or disability may authorize, in writing, an ex parte application to a judge designated to receive the same * * *. [N.J.S.A. 2A:156A-8]
Defendant's suggestion that the federal legislation prohibits any delegation of that authority to a substitute at the local level is without merit. Obviously the federal provision regulating local implementation, like any statute, must be construed reasonably to achieve the aims intended by that enactment. State v. Gill, 47 N.J. 441, 444 (1966). A legislative grant of power is necessarily attended by incidental authority fairly and reasonably necessary or appropriate to make it workable and effective. Juzek v. Hackensack Water Co., 48 N.J. 302, 314 (1966). Thus viewed, Congress simply could not have intended that local wiretap activity would be completely suspended during the absence or disability of the officials specifically named. Indeed, the legislative history clearly indicates that "the issue of delegation by that officer would be a question of State law." U.S. Code Cong. & Admin. News, supra, at 2187.
Both the State and defendant cite numerous federal cases which, it is urged, are dispositive of this issue of "delegation" of authority to initiate wiretap applications. As noted *9 in Cocuzza, the federal decisions have reached "different and sometimes conflicting interpretations" of the federal provisions. See the many cases cited in United States v. Robinson, 468 F. 2d 189, on rehearing en banc, 472 F.2d 973, 974, fn. 1, and at 975, dissent, fn. 1 (5 Cir.1973). The effect of those cases are, in my judgment, circumscribed by the specific provisions of the federal act under consideration and the unique factual situation involved in the hierarchy of the nationwide office of the Attorney General of the United States. Additionally, since "the results have been legally as well as factually divergent at the circuit and district [court] level" (Ibid. at 976), they are not determinative in construction of our local wiretap statute.
N.J.S.A. 2A:156A-8, by its plain language, properly permits some delegation of authority to apply for wiretaps. To what extent and under what circumstances may such power be delegated and when may such substitute properly act?
In order that the New Jersey Wiretap Act may be fully and reasonably implemented to achieve its purposes a county prosecutor may, in circumstances hereinafter set forth, appoint a qualified person as acting prosecutor with full powers of his office, who may invoke and authorize wiretap applications under the New Jersey Wiretap Act.
However, where the prosecutor has not himself reviewed and signed the authorization for the wiretap application, the State, when challenged on a motion to suppress, will be required to come forward to demonstrate that such failure to do so was necessary and justified in the situation presented. It should demonstrate what attempts were made to have the prosecutor himself approve the wiretap application and that the exercise by his substitute was otherwise proper and necessary in the circumstances then presented. This is not unlike a warrantless search where the State has the burden to justify its failure to secure a warrant. State v. Allen, 113 N.J. Super. 245, 249 (App. Div. 1970); State v. Gaudiosi, 97 N.J. Super. 565, 571-572 (App. Div. 1967). Only by imposing *10 such a burden upon the State will there be prevented the unfettered diffusion or dilution of authority with which the Legislature and the United States Congress were so concerned. U.S. Code Cong. & Admin. News, supra, at 2185. Only by adherence to such a standard of conduct will there be fostered the restraint in the use of wiretaps sought by those bodies, reflecting the United States Supreme Court's treatment of the subject in Berger and Katz. Ibid. at 2185-2187; State v. Cocuzza, supra. The Legislature did not and could not have intended that a prosecutor could cavalierly parcel out this power on a case-by-case basis or empower an acting prosecutor to act merely for convenience or to relieve some of the burdens of his office.
Obviously no hard and fast rule can be formulated to cover all circumstances and each case must rest on its own facts. Broadly stated, an acting prosecutor may only utilize the provisions of the wiretap act in those specific cases where the permanent prosecutor is actually absent or disabled or is otherwise prevented from himself authorizing the application. (I do not now deal with the situation where the prosecutor has fully reviewed a particular application but someone else merely signs the authorization for him). For example, a temporary absence of the prosecutor without a showing of emergent or exigent circumstances would not warrant exercise of the prosecutor's power, under this statute, even by a duly appointed and qualified acting prosecutor.
In such instances it will be the burden of the State to establish that the exercise of the power by a surrogate was necessary and warranted when tested against the aims and purposes of the legislation permitting wiretap intrusions. A trial court will thus be in a position to evaluate each case on its own merits and invoke the suppression sanction where it finds a disregard of the legislative mandate. N.J.S.A. 2A:156A-21.
The State further urges that this court should renounce the limited principle enunciated in State v. Cocuzza, supra, and hold that the prosecutor may also delegate his *11 power under the wiretap statute to specially designated assistant prosecutors who would be highly trained in those special areas of the law in order to assure uniformity of wiretap uses. Note, "New Jersey Electronic Surveillance Act," 26 Rutg. L. Rev. 617, 623 (1973). Such an approach misconstrues the important underlying purposes of Congress and of the New Jerey Legislature. The "uniformity" intended was that of "law enforcement policy" in restricting the use of wiretaps except in the clearest and most necessary of cases. U.S. Code Cong. & Admin. News, supra. "Few threats to liberty exist which are greater than that posed by use of eavesdropping devices." Berger v. New York, supra, 388 U.S. at 63, 87 S.Ct. at 1885, 18 L.Ed.2d at 1054-1055. This requires that in each case the prosecutor or his alter ego exercise a mature judgment involving a consideration of fundamental individual rights to determine whether those rights should be subjugated in the name of law enforcement. A.B.A. Standards Relating to Electronic Surveillance, 131-133 (approved draft 1971); State v. Sidoti, 120 N.J. Super. 208, 214 (App. Div. 1972). Such a decision cannot and should not be equated to mere compliance with the technical requirements of "probable cause" under the wiretap statute. No wiretap intrusion should be initiated on so casual a basis.
In support of its position the State cites United States v. Ceraso, 467 F.2d 647 (3 Cir.1972); United States v. Becker, 461 F.2d 230 (2 Cir.1972); United States v. Pisacano, 459 F.2d 259 (2 Cir.1972), and United States v. Fiorella, 468 F.2d 688 (2 Cir.1972). The State suggests that this "line" of cases stand for the proposition that once "a designated assistant * * * authorizes an application, it should be upheld."
This court does not agree. Aside from the difference in procedural requirement of the federal act, those cases, with the exception of Pisacano and Becker, clearly relied upon the fact that, somewhere along the line, the Attorney General *12 had "personally" approved the request. United States v. Ceraso, supra, 467 F.2d at 651-652. It was the personal evaluation by the Attorney General that was deemed controlling, and not the form of the written approval by a subordinate. (The federal act does not require written approval as does the New Jersey act.) The issue of delegation in the Pisacano case arose indirectly when the lower court refused to permit defendant to withdraw pleas of guilty. A reading of Pisacano will reveal that only one of three wiretaps did not receive the Attorney General's personal attention. That court, in refusing defendant's request to withdraw his guilty plea, indicated only that they were "not convinced" that they would have reversed a trial court's refusal to suppress evidence thus obtained  hardly a hard and fast pronouncement in the area. United States v. Pisacano, supra, 459 F.2d at 264. The Becker court begrudgingly adopted the Pisacano approach only because it felt "bound" to follow the "law of the [second] circuit." United States v. Becker, supra, 461 F.2d at 235-236.
Moreover, had the New Jersey Legislature intended to permit such delegation it could easily have indicated so in plain and simple language. Compare the New York Wiretap Act, which, as amended on May 24, 1972, allows such special delegation, but only to a special State Deputy Attorney in charge of the organized crime task force," but when speaking of "district attorneys" generally permits delegation only to "that person designated to act for him and perform his official function in and during his actual absence or disability." McKinney's Consol. Laws, c. 11-A, CPL 700.05(5).
In the light of the foregoing principles this court finds that the wiretap authorization in the instant case was properly and legally exercised by the acting prosecutor. The permanent prosecutor was unavailable since he was actually absent and out of the county during the entire month of August. He could not have personally evaluated this application under the circumstances. A qualified acting prosecutor *13 was properly appointed to exercise all of the duties of the office of prosecutor, and within the scope of those duties properly initiated this wiretap application. The situation thus warranted his exercise of power under the wiretap statute. The legislative mandate was satisfied.
Accordingly, the motion is denied.