PAUL PRICE, Petitioner, *v.* THE HONORABLE PAUL GOLDMAN, District Judge, Department No. X, of the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, Respondent.

No. 7783

July 30, 1974                    525 P.2d 598

*Ralph Denton* and *Brian L. Greenspun,* of Las Vegas, for Petitioner.

*George M. Dickerson,* of Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Paul Price, a journalist, has petitioned for a writ of prohibition. He asks this court to arrest proceedings which the Eighth Judicial District Court has undertaken, seeking to investigate unauthorized disclosure of information police allegedly obtained through a telephone wiretap that the District Court purportedly authorized pursuant to NRS 179.460.[1] If the Attorney General or the district attorney of any county had properly applied to the respondent court for an order authorizing the interception of communications, as NRS 179.460 provides, we are inclined to think respondent would, after entry of such order, have continuing jurisdiction to investigate apparent abuses thereof. NRS 179.465 to 179.490; cf. Farr v. Superior Court, County of Los Angeles, 99 Cal.Rptr. 342 (Cap.App. 1972). See also, In re Farr, 111 Cal.Rptr. 649 (Cal.App. 1974). However, the district attorney did not properly invoke the respondent court's jurisdiction in the initial instance and, indeed, later acknowledged to the court that he had no knowledge whatever of the court's order, until after one of his deputies had prompted its purported entry.[2]

---

[1] "179.460   CASES IN WHICH INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS MAY BE AUTHORIZED.

1.   The *attorney general or the district attorney of any county* may apply to a supreme court justice or to a district judge in the county where the interception is to take place for an order authorizing the interception of wire or oral communications, . . ." (Emphasis added.)

[2] After portions of the intercepted communications, which had been transcribed, appeared under petitioner's by-line in a Las Vegas newspaper, respondent initiated a closed investigatory inquiry during which Roy A. Woofter, the Clark County District Attorney testified:

NRS 179.460 is virtually a verbatim copy of the federal statute defining the circumstances under which an enforcement agency may seek authorization for the interception of communications, except that our statute authorizes the "attorney general or the district attorney of any county" to apply therefor, whereas the federal statute provides the "Attorney General, or any Assistant Attorney General specifically designated by the Attorney General, may authorize . . ." 18 USC § 2516(1).

Interpreting the federal statute, the United States Supreme Court has recently held that where a person not specifically mentioned in the statute presumes to authorize the interception of wire or oral communications that such authorization is outside the statute's sanction and utterly void. United States v. Giordano, 411 U.S. 952, 94 S.Ct. 1820 (1974).

Such holding was in accord with a long line of federal court decisions, decided well prior to the time the district attorney's deputy in this case, without the district attorney's knowledge,

---

COUNSEL: "Q You are a duly elected and qualified District Attorney of Clark County, Nevada, are you not?"
DISTRICT ATTORNEY: "A Yes."
COUNSEL: "Q In that capacity, have you had occasion to have called to your attention a request for an electronic surveillance order out of your office?"
DISTRICT ATTORNEY: "A Not prior to the order being issued."

\* \* \*

COUNSEL: "Q Did you have any personal knowledge of the officer's report which formed the foundation for the preparation of the affidavit in support of the application?"
DISTRICT ATTORNEY: "A None at all."
COUNSEL: "Q Have you ever seen it?"
DISTRICT ATTORNEY: "A No."
COUNSEL: "Q Have you seen any of the moving papers that were presented to the Court for the purpose of securing this order initially?"
DISTRICT ATTORNEY: "A No, I haven't."
COUNSEL: "Q Have you seen any of the subsequent papers that were prepared and presented to the Court for the purpose of getting a thirty-day extension order?"
DISTRICT ATTORNEY: "A No, I haven't."
COUNSEL: "Q Have you seen any of the products of the surveillance order by way of transcript of intercepted communications between parties that resulted from that order?"
DISTRICT ATTORNEY: "A No, I haven't."
COUNSEL: "Q You have never, in your office, viewed the file on the . . . matter that contains all of these matters?"
DISTRICT ATTORNEY: "A No, I haven't."
COUNSEL: "Q Have you had an opportunity to observe in your office any individuals not connected with your office reviewing any files relating to this matter?"
DISTRICT ATTORNEY: "A No, I haven't."

prompted the respondent court to enter the order the court is now seeking to vindicate.[3]

Without endeavoring to enumerate all the reasons the federal courts have given for confining the power to request wiretap authorizations to those persons specifically enumerated by law, we note our view that such reasons appear sound.[4] In NRS 179.460, we think, the context requires that the term "district attorney" not be construed to include his deputies. See: NRS 169.045 and 169.075. Prohibition lies to arrest

[3]United States v. King, 478 F.2d 494 (9th Cir. 1973);
United States v. Mantello, 478 F.2d 671 (D.C.Cir. 1973);
United States v. Roberts, 477 F.2d 57 (7th Cir. 1973);
United States v. Robinson, 468 F.2d 189 (5th Cir. 1972);
United States v. Sklaroff, 360 F.Supp. 353 (D.C.Ga. 1973);
United States v. Robinson, 359 F.Supp. 52 (D.C.Fla. 1973);
United States v. Fox, 349 F.Supp. 1258 (D.C.Ill. 1972);
United States v. Vasquez, 348 F.Supp. 532 (D.C.Cal. 1972);
United States v. Boone, 348 F.Supp. 168 (D.C.Va. 1972);
United States v. Narducci, 341 F.Supp. 1107 (D.C.Pa. 1972);
United States v. Doolittle, 341 F.Supp. 163 (D.C.Ga. 1972);
United States v. Baldassari, 338 F.Supp. 904 (D.C.Pa. 1972).
Interpreting substantially similar statutory language, at least three state courts, in *pre-Giordano* decisions, concluded wiretap orders issued on the authorization or application of an "assistant" prosecuting attorney were "fatally defective." Eg: Application of Olander, 515 P.2d 1211 (Kan. 1973); State v. Frink, 206 N.W.2d 664 (Minn. 1973); and, State v. Cocuzza, 301 A.2d 204 (Essex Co. Ct. N.J., 1973).

[4]"In *Giordano*, the Court relies on Congress' clearly expressed desire that an official, responsible to the political process, should make the decision authorizing electronic surveillance and bear the scrutiny of Congress and the public for that decision. As noted, the Senate Report which accompanied Title III to Congress stated that § 2516 'centralizes in a publicly responsible official subject to the political process' the formulation of electronic surveillance policy so that '[s]hould abuses occur, the lines of responsibility lead to an identifiable person. This provision in itself should go a long way toward guaranteeing that no abuses will happen.' S. Rep. No. 1097, 90th Cong., 1st Sess., 97 (1968), U.S. Code Cong. & Admin. News, p. 2185. Similarly, Senator Long, in support of the bill read from a report which stated 'We agree that responsibility should be focused on those public officials who will be principally accountable to the courts and the public for their actions.' Speaking to a related provision requiring that politically responsible state prosecuting officials authorize state applications, Professor Blakely of Notre Dame, instrumental in the drafting of Title III, stated:

'Now, the reason [for this requirement] is that unless we involve someone in the process of using this equipment who is politically responsible, that is, someone who must return to the people periodically and be reelected, it seems to me we miss a significant check on possible abuse.
As a practical matter, if there is police abuse, the remedies we

proceedings in aid of a void order. Maheu v. District Court, 88 Nev. 26, 493 P.2d 709 (1972); State ex rel. Friedman v. Dist. Ct., 81 Nev. 131, 399 P.2d 632 (1965); Culinary Workers v. Court, 66 Nev. 166, 207 P.2d 990 (1949). Whether independent contempt proceedings or other action might be instituted in the instant circumstances is not a question before us.

A peremptory writ of prohibition will issue forthwith.

can take against them are limited. If we involve the responsible judgment of a political official in the use of this equipment, and it is then abused, the people have a very quick and effective remedy at the next election.' "

United States v. Chavez, 412 U.S. 905, 94 S.Ct. 1858, 1864–1865 (1974).