133 N.J. Super. 326 (1975)
336 A.2d 489
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROUMANIA EARL TRAVIS, ANTONIO NASISI AND WILLIAM JULIANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1975.
Decided March 21, 1975.
*328 Before Judges COLLESTER, LORA and HANDLER.
Mr. William S. Singer, designated counsel, argued the cause for appellant Roumania Earl Travis (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Robert C. Gruhin argued the cause for appellant Antonio Nasisi.
Mr. Sam Weiss argued the cause for appellant William Juliano (Mr. Anthony F. Ditri, attorney).
Mr. Harry Robinson, III, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
PER CURIAM.
Roumania Travis, Antonio Nasisi and William Juliano were convicted of conspiracy to violate the gambling statutes (N.J.S.A. 2A:98-1) and maintaining premises used for gambling (N.J.S.A. 2A:112-3; N.J.S.A. 2A:121-3(c)). Both Travis and Nasisi were also convicted *329 of working for a lottery (N.J.S.A. 2A:121-3(a)), and Travis was further convicted of possession of lottery slips (N.J.S.A. 2A:121-3(b)).
Defendant Travis was sentenced to three concurrent six-month terms in the Essex County Correction Center, a suspended two to three-year term at the State Correctional Institution for Women, and a $1,000 fine. Defendant Nasisi was sentenced to three concurrent terms of two to two and a half years in State Prison and a $1,000 fine. Defendant Juliano received two concurrent terms of two to two and a half years at State Prison and a $1,000 fine.
The three defendants filed separate appeals which, on motion by the State, were consolidated.
A pretrial motion to suppress on the grounds the wiretap used in the case was illegal was denied by the trial judge in a written, reported decision, State v. Travis, 125 N.J. Super. 1 (Cty. Ct. 1973).
All defendants contend the trial judge erred in his denial of the motion to suppress the wiretap evidence on the ground that there had not been a lawful application for the court-authorized tap. The authorization of the wiretap in question was signed by Leonard D. Ronco, an assistant prosecutor in the Essex County Prosecutor's Office, when the prosecutor was away on vacation during the month of August 1972 and had designated Ronco as the acting prosecutor. The order was signed by a Superior Court judge empowered to sign such orders.
We are of the view the pretrial motions to suppress were properly denied, essentially for the reasons expressed by the trial judge in State v. Travis, supra. Subsequent to his decision on the motions, the United States Supreme Court decided United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). In Giordano a wiretap application made before a federal judge stated that the specific Assistant Attorney General in charge of wiretap authorizations, and so specially designated by the Attorney General pursuant to 18 U.S.C.A. § 2516(1), had approved the *330 application. In actuality, the Attorney General's executive assistant had placed the Attorney General's initials on a memo instructing authorization of the application by the named Assistant Attorney General, who himself had not personally reviewed the application.
The Supreme Court found that the statute (after which the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1, is patterned) conferred upon the "Attorney General, or any Assistant Attorney General specially designated by the Attorney General" the power to authorize an application for a wiretap order to a federal judge, but did not authorize wiretap applications to be made by any individuals other than the Attorney General or an Assistant Attorney General specifically designated by him; that Congress intended to narrowly limit the power for a few who were responsive to the political process, a category to which the executive assistant to the Attorney General obviously did not belong. 416 U.S. at 520, 94 S.Ct. at 1829, 40 L.Ed.2d at 356.
However, although the court stated that "it is apparent that Congress desired to centralize and limit this authority where it was feasible to do so," Id., 416 U.S. at 521, 94 S.Ct. at 1830, 40 L.Ed.2d at 357; it further noted that 18 U.S.C.A. § 2516(2) provided for a wider dispersal of authority among state officers to approve wiretap applications and left the matter of delegation up to state law. In a footnote the court referred to the comments in S. Rep. No. 1097 that the delegation of authority in the states could proceed down to the district attorney (county prosecutor) level, but "[t]he proposed provision does not envision a further breakdown. Although city attorneys may have in some places limited criminal prosecuting jurisdiction, the proposed provision is not intended to include them."
Here, the prosecutor was unavailable since he was out of the county for the entire month of August. An acting prosecutor was appointed by him to exercise all of the duties of the office of prosecutor during the prosecutor's absence. *331 We agree with the trial judge's determination that the prosecutor had the inherent power to designate an acting prosecutor to assume the duties of his office during such absence, and as acting prosecutor Ronco properly initiated this wiretap application within the scope of his duties.
Under the circumstances of this case his exercise of the power was within the comprehension of N.J.S.A. 2A: 156A-8 of the New Jersey Wiretapping Act which empowers a person designated to act for a county prosecutor and to perform his duties in and during his actual absence or disability to authorize a wiretap application. There is no merit to defendants' contentions that the statute does not contemplate delegation to a subordinate during a prosecutor's vacation. Cf. State v. Cocuzza, 123 N.J. Super. 14, 22 (Cty. Ct. 1973), and see State v. Travis, supra, 125 N.J. Super. at 6, 10.
During the course of his opening to the jury the prosecutor stated:
Again, you might ask, well, what led to this information that was the basis of this search warrant?
Well, on or about August 1, 1972, information was received by certain law enforcement officers relative to the criminal activities of some of these defendants * * *
Motions for a mistrial were denied. Immediately thereafter the remarks were ordered stricken by the trial judge and the jury instructed to disregard the comment. All defendants urge prejudicial error. However, we are satisfied that in the context of this case and in light of the curative instruction, the remarks complained of were not sufficient to raise a reasonable doubt that the jury was led thereby to a result it otherwise might not have reached. State v. Macon, 57 N.J. 325, 335-336 (1971). Cf. State v. Bankston, 63 N.J. 263 (1973).
Defendant Nasisi's contention that the competency of the wiretap evidence was not demonstrated because the evidence of the installation of the wiretap was insufficient is *332 meritless. He argues that since the exact location of the terminal box, appearances, access points, tap station and site of the interception were not revealed, there was no showing the taps were in fact on defendant's line and hence there was an insufficient foundation laid for the admission of the taped conversations. The trial judge ruled this information was privileged under regulations of the Public Utilities Commission and to reveal the monitoring location would endanger future surveillances. Be that as it may, we are of the view defendant did not make a satisfactory showing of why this information was needed to show a possible inaccurate hookup. Evid. R. 34.
We find no merit in defendant Nasisi's further contention the trial judge erred in permitting two of perhaps 80 or 90 taped calls to be played during the prosecutor's summation since this is no different from any attorney utilizing demonstrable evidence before the jury in the course of summation. People v. Coontz, 119 Cal. App.2d 276, 259 P.2d 694 (Cal. D. Ct. App. 1953). Similarly, there is no substance to the argument that the expert's opinion, embracing as it did the hypothetical question posed, was improper, or that incorporated therein were many assumptions of fact not within the testimony. See State v. Boiardo, 111 N.J. Super. 219, 237-238 (App. Div. 1970), certif. den. 57 N.J. 130 (1970), cert. den. 401 U.S. 948, 91 S.Ct. 931, 28 L.Ed.2d 231 (1971).
Defendant Juliano asserts there was insufficient evidence to connect him with the conspiracy and to justify his conviction for maintaining a place for gambling. Our review of the record satisfies us there was sufficient credible evidence to sustain defendant Juliano's conviction. While circumstantial, it was nevertheless persuasive and such that the jury could properly find beyond a reasonable doubt that defendant Juliano was guilty of the crimes charged. State v. Moffa, 42 N.J. 258, 263 (1964); State v. Reyes, 50 N.J. 454, 458-459 (1971); State v. Seaman, 114 N.J. Super. 19, 29-30 (App. Div. 1971); R. 3:18-1.
*333 Lastly, defendants Travis and Nasisi contend their sentences are manifestly excessive, basically because they are custodial and they are first offenders with no previous records. Additionally, Nasisi asserts his poor health and left arm amputation mandate a suspended sentence and probation. Travis claims her participation was at the lowest level and of a minimal nature.
Review of the record together with the presentence reports reveals no abuse of discretion in the sentences imposed. State v. Tyson, 43 N.J. 411 (1964), cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965); State v. Souss, 65 N.J. 453 (1974); State v. Leverette, 64 N.J. 569, 571 (1974); State v. De Stasio, 49 N.J. 247 (1967), cert. den. 389 U.S. 830, 88 S.Ct. 96, 19 L.Ed.2d 89 (1967); State v. Ivan, 33 N.J. 197 (1960).
Affirmed.