389 So.2d 631 (1980)
STATE of Florida, Petitioner,
v.
Otis DANIELS and Lula Bell Phillips, Respondents.
No. 57773.
Supreme Court of Florida.
October 16, 1980.
*632 Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for petitioner.
B. Kenneth Vickers of Vickers & Rohan, Jacksonville, for respondents.
BOYD, Justice.
This cause is before the Court on petition for certiorari to review the decision of the District Court of Appeal, First District, announced in an opinion reported at 381 So.2d 707. We have jurisdiction because the district court certified that its decision passed upon a question of great public interest. Art. V, § 3(b)(3), Fla. Const.
This case presents the question of whether national legislation regulating the practice of interception of wire and oral communications precludes a Florida assistant state attorney authorizing an application for a judicial wiretap order.
*633 The respondents were convicted of conspiracy to sell illegal drugs. The evidence against them consisted principally of tapes of telephone conversations intercepted pursuant to judicial order. An assistant state attorney authorized a police investigative officer to apply for the order under section 934.07, Florida Statutes (1975). The respondents argued on appeal that the wiretap order was invalid because under title 18, United States Code, section 2516(2), only state attorneys, and not assistant state attorneys, may authorize applications for such orders.
The district court accepted the argument and held for the appellants, stating:
Based upon a reading of the federal statute and a consideration of the authorities above cited we are constrained to conclude that notwithstanding the construction which has been placed upon our own state statute by other District Courts of Appeal and by the Supreme Court of Florida, the applicable federal statute is preemptive and a careful reading of that statute can only lead to the conclusion that the "principal prosecuting attorney" authorized by 18 U.S.C. § 2516 (2) to make application for an order authorizing or approving the interception of wire or oral communications cannot be construed to include an assistant state attorney.
Daniels v. State, 381 So.2d 707, 715 (Fla.1st DCA 1979). Upon petition by the state for rehearing, the district court certified the following question:
Does Title 18 U.S.C. Section 2516, requiring application by the "principal prosecuting attorney" for an order authorizing or approving the interception of wire or oral communications, preclude the exercise of that power by a general class of prosecutors who are assistant state attorneys in Florida?
Id. at 719.
Section 934.07, Florida Statutes (1975), provides:
The Governor, the Department of Legal Affairs, or any State Attorney may authorize an application to a judge of competent jurisdiction for, and such judge may grant in conformity with this chapter, an order authorizing or approving the interception of wire or oral communications by the Department of [Criminal] Law Enforcement or any law enforcement agency of this state or any political subdivision thereof having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling (when the same is of an organized nature or carried on as a conspiracy in violation of the laws of this state), robbery, burglary, grand larceny, prostitution, criminal usury, abortion, bribery, extortion, dealing in narcotic drugs or other dangerous drugs, or any conspiracy to commit any violation of the laws of this state relating to the crimes specifically enumerated above.
The district court noted that its decision was in conflict with State v. Angel, 261 So.2d 198 (Fla.3d DCA 1972), aff'd, 270 So.2d 715 (Fla. 1972). Petitioner the State of Florida would have us follow Angel. The state argues that since article V, section 17 of the Florida Constitution provides for the appointment of assistant state attorneys and section 27.181(3), Florida Statutes (1975), allows assistant state attorneys all the powers of state attorneys, except with regard to signing informations, we should hold that the assistant in this case had the power to authorize the application under section 934.07.
Title 18, United States Code, section 2516(2) provides:
The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for, and such judge may grant in conformity with section 2518 of this chapter and with the applicable State statute an *634 order authorizing, or approving the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.
Section 2516 is the codification of a part of title III of the Omnibus Crime Control and Safe Streets Act of 1968. Pub.L. 90-351, title III, § 802; 82 Stat. 216. Subsection (2) was the response of Congress to the United States Supreme Court decision in Berger v. New York, 338 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). The Court held there that a New York statute authorizing orders for electronic surveillance on the ex parte oath or affirmation of a police officer above the rank of sergeant was unconstitutional under the fourth amendment. The statute was held deficient for including (1) no requirement of a description of the conversation sought to be intercepted; (2) no limitation on the number of intrusions allowed on a single showing of probable cause; (3) no termination date once the conversation sought had been seized; and (4) no provision for notifying a suspect that an electronic search had been conducted. Congress drafted the Act to meet the Court's objections. See, State v. Siegal, 13 Md. App. 444, 285 A.2d 671 (Md. Ct. Spec. App. 1971), aff'd 266 Md. 256, 292 A.2d 86 (Md. 1972).
Congress intended the Act to be a uniform model to be followed by all the states. "Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S.Rep.No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Ad.News, pp. 2112, 2153. As part of this uniformity Congress explicitly limited the type of state officials who could authorize applications for wiretaps in section 2516(2).
Paragraph (2) provides that the principal prosecuting attorney of any State or the principal prosecuting attorney of any political subdivision of a State may authorize an application to a State judge of competent jurisdiction, as defined in section 2510(9), for an order authorizing the interception of wire or oral communications. The issue of delegation by that officer would be a question of State law. In most States, the principal prosecuting attorney of the State would be the attorney general. The important question, however, is not name but function. The intent of the proposed provision is to provide for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief prosecuting officer of the State. Who that officer would be would be a question of State law. Where so such office exists, policy making would not be possible on a statewide basis; it would have to move down to the next level of government. In most States, the principal prosecuting attorney at the next political level of the State, usually the county, would be the district attorney, State's attorney, or county solicitor. The intent of the proposed provision is to centralize areawide law enforcement policy in him. Who he is would also be a question of State law. Where there are both an attorney general and a district attorney, either could authorize applications, the attorney general anywhere in the State and the district attorney anywhere in his county. The proposed provision does not envision a further breakdown. Although city attorneys may have in some places limited criminal prosecuting jurisdiction, the proposed provision is not intended to include them.
Id. at 2187.
There is no suggestion in the Senate report or in the Berger opinion that the *635 fourth amendment requires that applications be made by "principal prosecuting attorneys." The question to be decided, therefore, is whether Congress has the authority to determine which state officers may, and which may not apply for judicial orders for electronic surveillance.
We believe that, with regard to telephone communications, Congress enacted this legislation under the commerce clause. U.S.Const. art. I, § 8, cl. 3. With regard to interception of other oral communications, Congress acted under section 5 of the fourteenth amendment. The classic formulation of the test of Congressional authority under the necessary and proper clause of the constitution, U.S.Const. art. I, § 8, cl. 18, is the statement by Chief Justice Marshall: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adopted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819). The same broad authority inheres in Congress under section 5 of the fourteenth amendment.
Whatever legislation is appropriate, that is, adopted to carry out the objects the amendments have in view, whatever tends to enforce submission to the prohibitions they contain, and to secure to all persons the enjoyment of perfect equality of civil rights and the equal protection of the laws against State denial or invasion, if not prohibited, is brought within the domain of congressional power.
Ex parte Virginia, 100 U.S. (10 Otto) 339, 345-346, 25 L.Ed. 676 (1880). See also, Katzenback v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); United States v. Guest, 383 U.S. 745, 774, 86 S.Ct. 1170, 1186, 16 L.Ed.2d 239 (1966) (Brennan, J., concurring in part and dissenting in part). We think the United States Constitution grants to Congress the authority to require that the power to seek electronic surveillance orders be placed with some central, responsible authority in order to guard against violations of personal rights protected by the fourth and fourteenth amendments.
The statutory concept that only specified classes of officials be allowed to authorize the application for an intercept order was at issue in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). In that case, the executive assistant to the Attorney General placed the Attorney General's initials on a memorandum authorizing an assistant attorney general to apply for a wiretap order. Section 2516(1) specifically provided that "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application" for a wire tap order. Although the executive assistant had acted in accordance with the Attorney General's instructions, and although title 28, United States Code, section 510, authorized the Attorney General to grant any of his authority to any employee of the Department of Justice, the Supreme Court held that the executive assistant did not have the authority to authorize an application. The Court found that the matter of delegation was addressed by section 2516, which specifically limited the Attorney General to delegating his authority to a specially designated assistant attorney general.
Congress may expressly enumerate the officials of the national government that can be delegated the serious responsibility of authorizing applications for electronic surveillance orders. It has done so in section 2516(1). With regard to the states, however, "Congress was faced with fifty different statutory schemes for parceling out the state's law enforcement powers. The section must be construed so as to permit each state to fit its scheme into the framework of the federal statute even though the distribution of power or the names of the officers may differ from state to state." United States v. Lanza, 341 F. Supp. 405, 410 (M.D.Fla. 1972). Congress has made clear, however, that such authority must be given only to officials responsive to the political process.
*636 Based on section 2516, its legislative history, and the Giordano decision, we conclude that section 27.181(3), Florida Statutes (1975), cannot be held to empower assistant state attorneys to authorize applications for electronic eavesdropping orders. This is so for two reasons. First, Congress intended such authority to be limited to a narrow class of officials to ensure that such decisions come from a centralized, politically responsive source. Second, the officials who may exercise this power must be specifically enumerated in the authorizing statute. Our statute granting assistant state attorneys all the powers of state attorneys generally is not a specific grant of authority to authorize electronic surveillance applications. See, United States v. Narducci, 341 F. Supp. 1107 (E.D.Pa. 1972), aff'd 500 F.2d 1401 (3d Cir.1974); State v. Frink, 296 Minn. 57, 206 N.W.2d 664 (1973). To the extent that our decision in Angel v. State, 270 So.2d 715 (Fla. 1972), conflicts with the holding herein we recede from that case.
Our electronic surveillance authorizing statute is section 934.07, set out in full above. Because assistant state attorneys are not specifically mentioned, the national standard prevents us from construing the statute to say that the legislature meant to include them. See, Application of Olander, 213 Kan. 282, 515 P.2d 1211 (1973); see also, Price v. Goldman, 90 Nev. 299, 525 P.2d 598 (1974). If the legislature were to include all assistant state attorneys in the class of officials who may authorize electronic surveillance applications, such inclusion would conflict with the federal standard and would be invalid. See State v. Farha, 218 Kan. 394, 544 P.2d 341 (1975) cert. denied, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976).
This is not to say that the legislature may not authorize state attorneys to delegate their authority to an assistant state attorney so long as such provision for delegation is narrowly confined to ensure centralization and uniformity of policy. Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (1975). But see, Poore v. State, 39 Md. App. 44, 384 A.2d 103 (Md. 1978). Thus a provision for delegation of the authority cannot be unlimited in scope, see, State v. Cocuzza, 123 N.J. Super. 14, 301 A.2d 204 (N.J.Cty.Ct. 1973), but can be designed to allow for continuity of administration when the state attorney is absent for an extended period of time. State v. Travis, 125 N.J. Super. 1, 308 A.2d 78 (N.J. Cty.Ct. 1973) aff'd 133 N.J. Super. 326, 336 A.2d 489 (N.J.Super.Ct.App.D. 1975). Our legislature, however, "has chosen to delimit this authority even more severely than does the statute governing federal applications. The Florida statute authorizes no delegation whatever." United States v. Lanza, 341 F. Supp. 405, 408-409 (M.D.Fla. 1972).
We therefore hold that section 934.07, Florida Statutes (1975), did not empower an assistant state attorney to authorize the application for wiretap in the instant case. We answer the certified question in the affirmative. The decision of the district court, reversing the respondents' convictions, is affirmed. We remand to the district court with directions that it issue forthwith the appropriate mandates in this cause.
It is so ordered.
SUNDBERG, C.J., and ADKINS, ENGLAND and McDONALD, JJ., concur.
ALDERMAN, J., dissents with an opinion, with which OVERTON, J., concurs.
ALDERMAN, Justice, dissenting.
I answer the certified question in the negative and would hold that title 18 U.S.C. § 2516, requiring application by the "principal prosecuting attorney" for an order authorizing or approving the interception of wire or oral communication, does not preclude the exercise of that power by a general class of prosecutors who are assistant state attorneys in Florida. The reasons for my dissent are the same as those expressed by Judge Anne C. Booth in her dissenting opinion to the decision of the district court, and I would adopt Judge Booth's dissent as the opinion of this Court.
OVERTON, J., concurs.