381 So.2d 707 (1979)
Otis DANIELS, a/K/a "Junkyard Slim", and Lula Bell Phillips, Appellants,
v.
STATE of Florida, Appellee.
Nos. FF-474, FF-451.
District Court of Appeal of Florida, First District.
February 1, 1979.
Rehearing Denied August 30, 1979.
*708 Bartley K. Vickers of Mahon, Farley & Vickers, Jacksonville, for appellants.
Robert L. Shevin and Jim Smith, Attys. Gen., Richard W. Prospect, Raymond L. Marky and Patti Englander, Asst. Attys. Gen., for appellee.
BOYER, Acting Chief Judge.
These consolidated cases have their genesis in the same factual setting or episode as do several other cases lately pending or now pending in this court. Some of the other cases which are factually similar, though in some instances involving different points of law or different arguments regarding the same points of law, have already been decided. Those which are relevant to the issues involved sub judice will be referred to and cited in subsequent portions of this opinion.
Appellant Daniels was charged in a three count information with the crimes of conspiracy to commit a felony. The information was twice amended and Daniels was ultimately tried and convicted on all three counts.
Phillips was charged only in the first count of the information with the offense of conspiracy to sell cocaine. She entered a plea of nolo contendere, specifically reserving her right to appeal the court's denial of a motion to suppress certain tape recordings which motion had been theretofore heard by the trial judge and denied. Daniels' motion for new trial was denied. He was sentenced to a term of ten years and ordered to pay a fine of $5,000.00. Phillips was sentenced to a term of three years with the provision that after she had served one year in prison she would serve the other two years on probation.
Both appellants filed timely notices of appeal. Upon appropriate motion the two cases were consolidated.
The basic facts are not in dispute.[1] In June of 1975, Investigator George Howell of the Vice Squad of the Jacksonville Sheriff's Office was given an order authorizing the interception of wire communications from the residence of one Eddie Lee Rosemond *709 in Jacksonville. Pursuant to that order, police officers attached equipment to the phone line to intercept incoming and outgoing calls from that residence.
Ten tapes of different phone conversations were admitted into evidence.[2] Daniels' voice was identified by several police officers.
Nathaniel McClain, a vice squad officer, was tendered by the State as an expert in the jargon that is customarily used by traffickers and dealers in illegal heroin and cocaine. He was allowed to interpret the calls and give his opinion as to the interpretation of what the parties meant in their taped conversations.[3]
Appellants urge four points for our consideration. As phrased in appellants' brief, they are as follows:
I.
"Whether an Assistant State Attorney can authorize an application for a wiretap.
II.
"Whether the affidavit in support of the order authorizing interceptions sufficiently alleged that reasonable investigative techniques had been tried but had failed.
III.
"Whether the Court erred in qualifying Investigator McClain as an expert in the language and jargon used by traffickers, dealers, and users of illegal drugs.
IV.
"Whether the trial court erred in allowing Investigator McClain to testify as to his interpretation of the phone conversations."
The points will be considered in the order of convenience rather than the order in which they are argued in the briefs.
Under his third point appellant Daniels[4] complains of certain language employed by the trial judge wherein he instructed the jury relative to the testimony of Investigator McClain, as follows:
"Now, ladies and gentlemen of the jury, in your absence the Court has accepted Mr. McClain, who is now on the witness stand, as an expert in the jargon or language used by traffickers, dealers, or users of heroin and cocaine, and the Court accepts Mr. McClain's qualifications as an expert in that jargon."
Prior to that statement being made to the jury, and now on appeal, appellants' counsel argues that the statement was extremely prejudicial. His objection is directed to the words "an expert in the jargon or language used by traffickers, dealers, or users of heroin and cocaine", contending that the only inference to be drawn from those words is that anyone using the language as described by Mr. McClain was a dealer, trafficker or user of heroin or cocaine.
Our examination of the record, however, convinces us that in the light of the totality of the circumstances no error was committed. The trial judge also instructed the jury:
"An expert witness is one who by education, training or experience has become an expert in any art, science, profession, business or calling. An expert witness is permitted to give his opinion as to the matters in which he is an expert and may also state the reasons for his opinion. You should consider each expert opinion received in evidence and give it the weight you think it deserves and you may reject it entirely if you find that the alleged facts upon which it is based have not been proved or that the reasons given in support of the opinion are not sound."
*710 The question of whether a person is qualified to testify as an expert on a particular subject is a question of law.[5] Officer McClain was found by the trial judge to be an expert in a certain specified area. His statement to the jury was obviously so that they would be aware of the purpose of Officer McClain's testimony. The jury was also properly advised regarding their function in assessing the testimony.[6]
Appellant Daniels' fourth point[7] has been resolved contrary to his contentions by this court's opinion in Slater v. State, 356 So.2d 69 (Fla. 1st DCA 1978) wherein we stated:
"* * * [A]ppellant contends that the trial judge committed reversible error when permitting a police officer, over the objection of the defendant, to be qualified as an expert witness regarding street language in the drug culture and permitting the officer to explain to the jury his interpretation of words used by the alleged conspirators in intercepted conversations, the tapes of which were played to the jury. During those conversations the speakers used the terms `C'; `white girl'; `lady'; `snow'; `party pack'; `rock and roll'; `boy'; `white boy'; `doogee'; `kattie'; and the expression `three, but I know a duece smoking.' The words were used in contexts wherein their normal lexicographical meanings would be illogical and meaningless. They would make no sense at all to the average juror. We find no error. (See United States v. Cirillo, 499 F.2d 872 (2d Cir.1974); United States v. Borrone-Iglar, 468 F.2d 419 (2d Cir.1972); State v. Grayton, 163 Conn. 104, 302 A.2d 246 (1972), cert. den. 409 U.S. 1045, 93 S.Ct. 542, 34 L.Ed.2d 495 (1972); and Llerandi v. Blackburn, 97 So.2d 247 (Fla. 1957))" (356 So.2d at page 71)
Turning now to appellants' second point,[8] they contend that the trial judge erred in finding that other investigative techniques were tried and failed or reasonably appeared to be unlikely to succeed if tried.
F.S. 934.09 sets forth the procedure for interception of wire or oral communications in Florida. That statute provides, in material part, as follows:
"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
* * * * * *
"(c) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.
* * * * * *
"(3) Upon such application, the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception or wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting if the judge determines on the basis of the facts submitted by the applicant that:
* * * * * *
"Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; * * *"[9]
In the sworn application for the order authorizing the interceptions Deputy Sheriff Howell stated:

*711 "6. Although a Drug Enforcement Administration agent has succeeded in purchasing heroin from Eddie Lee Rosemond, under controlled conditions, as evidenced by the affidavit of Anthony W. Hickson, investigators are presently unable to determine where Eddie Lee Rosemond secretes the heroin and who his supplier might be. Although normal investigative procedures have yielded the information that Eddie Lee Rosemond is, in fact, a dealer in heroin, traditional investigative techniques, such as physical surveillance and use of the search warrant process, are not likely to reveal the ultimate source of the heroin in which Eddie Lee Rosemond deals. I know of no practical way, other than the use of the electronic intercept being applied for, to determine where Eddie Lee Rosemond secretes his supply of heroin. Furthermore, I know of no other practical way to determine the distribution areas, financiers and dealers in heroin centering around the Eddie Lee Rosemond organization."
In discussing the statutory requirement relative to exhaustion of normal investigative procedures it was stated in United States v. Armocida, 515 F.2d 29 (3d Cir.1975) that:
"The statutory requirement that `normal investigative procedures' be first exhausted, must be reviewed in a `practical and common sense fashion':
"`Subparagraph (c) requires a full and complete statement as to whether or not normal investigative procedures have been tried and have failed or why these are unlikely to succeed if tried, or to be too dangerous... . The judgment would involve a consideration of all the facts and circumstances. Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants. Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. See Giancana v. United States, 352 F.2d 921 (7th) certiorari denied, 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965); New York v. Saperstein, 2 N.Y.2d 210, 159 N.Y.S.2d 160, 140 N.E.2d 252 (1957). What the provision envisions is that the showing be tested in a practical and commonsense fashion. Compare United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).'
"1968 U.S.Code Cong. & Admin.News at p. 2190 (emphasis supplied). See United States v. James, 161 U.S.App.D.C. 88, 494 F.2d 1007, 1015-16 (1974), cert. denied, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). To support a finding that normal investigative procedures are unlikely to be successful, we interpret the congressional directions as only requiring that there exists a factual predicate in the affidavit." (515 F.2d at page 37-38)[10]
The gist of the several decisions on the point reveals that the purpose behind the requirement is to assure that wiretapping is not resorted to in situations where traditional techniques would suffice to expose the crime. It is not necessary, however, that all possible techniques or alternatives to wiretapping be first exhausted. The showing must be that other reasonable investigative procedures have been tried and either have failed or reasonably appear likely to fail or to be too dangerous, or if other techniques have not been tried, the reasons why they reasonably appear to be unlikely to succeed if tried or to be too dangerous, viz: That wiretapping appears the most reasonable investigative technique under the circumstances to secure other and conclusive evidence of criminal involvement.[11] *712 In addition to Deputy Sheriff Howell's statement above quoted the judge who authorized the wiretap had the benefit, the record reveals, of other sworn statements all of which were part of the application. We conclude that the application, when considered in its entirety, was sufficient to support the court's determination, as required by the above cited statute, that normal investigative procedures had been tried and had failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous.[12]
Finally, we address appellants' first point regarding the authority of an Assistant State Attorney to authorize an application for a wiretap.[13]
F.S. 934.07 provides that "The Governor, the Attorney General or any State Attorney may authorize an application to a judge of competent jurisdiction for, and such judge may grant in conformity with this chapter, an order authorizing or approving the interception of wire or oral communications * * *."
Article V, Section 17 of the Constitution of the State of Florida concludes with the sentence: "State Attorneys shall appoint such assistant state attorneys as may be authorized by law."
F.S. 27.181(3) provides:
"(3) Each assistant state attorney appointed by a state attorney under the authorization of this act shall have all of the powers and discharge all of the duties of the state attorney appointing him, under the direction of said state attorney, except, however, that due to constitutional limitations, no such assistant may sign informations. He shall sign indictments and other official documents, except informations, as assistant state attorney, and, when so signed, the same shall have the same force and effect as if signed by the state attorney."
In State v. Angel, 261 So.2d 198 (Fla. 3rd DCA 1972)[14] it was held that under Article V, Section 9B of the former Constitution of the State of Florida and F.S. 27.181(3), above quoted, assistant state attorneys are entitled to authorize an application for an order authorizing or approving the interception of wire or oral communications, observing:
"* * * Of course, this authorization only puts in motion the procedure to obtain such authority from a judicial officer pursuant to Section 934.09 Florida Statutes, and it is assumed that any judicial officer will comply with the requirements of chapter 934 before he permits the interception of any such communication." (261 So.2d at page 200)
In Mitchell v. State, 381 So.2d 1066 (Fla. 1st DCA 1979), Chief Judge McCord, writing for this court, speaking of an application for a postponement of serving of inventories pursuant to F.S. 934.09(7)(e), said:
"Appellant's contention is that because the application for extension was authorized by an assistant state attorney rather than the state attorney, it is invalid. This contention of appellants is without merit. § 934.07, Florida Statutes (1975), provides that any state attorney may authorize an application to a judge of competent jurisdiction for an order authorizing interception of wire communications by the Department of Criminal Law Enforcement. § 27.181(3), Florida Statutes (1975), gives the assistant all the powers of the state attorney. See State v. Angel, 261 So.2d 198 (Fla. 3 DCA 1972), aff'd. 270 So.2d 715."
It is well settled, therefore, that under Florida law an application authorized by an assistant state attorney is valid.
*713 However, appellants contend that the Federal statute[15] governs all intercepts of wire communications; that although a state may adopt more stringent measures than those set forth in the Federal statute, a state may not adopt more permissive standards and that under the Federal statute only the "principal" prosecuting attorney of any state or the "principal" prosecuting attorney of any political subdivision thereof may make application for an order authorizing or approving the interception of wire or oral communications.
There are surprisingly few cases, nationwide, which have considered the point. The leading case appears to be State v. Farha, 218 Kan. 394, 544 P.2d 341 (1975), cert. den. by the Supreme Court of the United States, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186, wherein the Supreme Court of Kansas, in an exhaustive opinion, discussed the history of the federal statute and finally concluded that applications made by an assistant attorney general of the Kansas Attorney General's office and an assistant district attorney of a Kansas County were invalid and that evidence obtained pursuant to an order based upon such applications was inadmissible and should have been suppressed. Several portions of that opinion are worthy of quotation: Regarding federal preemption, the court said:
"Several principles emerge from decisions interpreting 18 U.S.C. § 2516(2) providing for state regulation of electronic surveillance. First, the federal act is not self-executing on the states; in order to obtain a wiretap warrant from a state court there must be a state wiretap statute in effect (State v. Siegel, 266 Md. 256, 292 A.2d 86; Halpin v. Superior Court, 6 Cal.3d 885, 101 Cal. Rptr. 375, 495 P.2d 1295, cert. den. California v. Halpin, 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246). "Second, although a state may adopt a statute with standards more stringent than the requirements of the federal law (Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176; Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730), a state may not adopt a statute with standards more permissive than those set forth in Title III (In re Olander, 213 Kan. 282, 515 P.2d 1211). `A State statute would be preempted where the State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' (Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819, 835). If a state wiretap statute is more permissive than the federal act, any wiretap authorized thereunder is fatally defective and the evidence thereby obtained is inadmissible under 18 U.S.C. § 2515." (544 P.2d at pages 347-348)
Striking down a statute of its own state which authorized an assistant attorney general to make application for a wiretap order, the court said:
"* * * In Kansas the attorney general can appoint as many assistant attorneys general as he may deem necessary. [citation omitted] We cannot perceive Congress intended that at any given time the number of persons in Kansas who may obtain a wiretap order is limited only by the number of assistant attorneys general and county attorneys in existence at the particular time. * * *"
* * * * * *
"* * * Strictly circumscribing this authority to that stated in the federal act  in Kansas the attorney general  will clearly eliminate any possible after-the-fact question as to identifiable individual responsibility for the application. Inasmuch as K.S.A. 1971 Supp. 22-2513(1) was more permissive than 18 U.S.C. § 2516(2) in that it purported to authorize an assistant attorney general to make application for a wiretap order, our state statute must be held invalid as in conflict with the federal act. This means the trial court correctly ruled the Shawnee county wiretaps were illegally obtained." (544 P.2d at page 350)
The Chief Justice of the Kansas Supreme Court dissented on the narrow ground that *714 the record in that case revealed that although the applications were made by assistants, they were authorized and approved by the attorney general. The record in this case is silent as to whether or not, sub judice, the applications were in fact approved by the state's attorney and no such issue drawing that distinction has been presented for our consideration.
In Poore v. State, 39 Md. App. 44, 384 A.2d 103, the Court of Special Appeals of Maryland, in March of 1978, considered a case wherein an assistant state's attorney, rather than the principal prosecutor, sought and obtained an extension of time in which to give notice and file an inventory pursuant to that state's wiretapping statute. Discussing the "role of principal attorney" as contained in the federal statute[16] the Court said:
"The Supreme Court, in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), construed section 2516(1) as meaning that only the `Attorney General, or any Assistant Attorney General specifically designated by the Attorney General,' 18 U.S.C. § 2516 (1) (1970), was authorized to apply to a federal judge for an electronic interception order. An approval of the application by the `Executive Assistant to the Attorney General,' Id. at 510, 94 S.Ct. at 1824, 40 L.Ed.2d at 350, based on his `knowledge of the Attorney General's actions in previous cases,' Id., did not satisfy the statute. A wiretap order by the United States District Court for the District of Maryland was invalid and the evidence derived therefrom was suppressed.
"Section 2516(2) speaks of `[t]he principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision . .. .' The language of that section does not confer upon the principal prosecuting attorney any power to delegate to an assistant the authority to apply for an electronic interception. The Congress would not have so carefully limited the power of the Attorney General of the United States to delegate to a specifically designated assistant the authority to seek orders to intercept oral or telephonic communications and at the same time bestowed upon the principal prosecutor of any State, city or county in the nation an unbridled license to clothe any or all of his or her assistants with permission to seek such orders. It is inconceivable that the country's highest legal officer would be so shackled while the principal prosecutor of the least populated county in the United States was free to permit any designee to apply for an interception order. We think the intent of the Congress to be that the authority devolved upon the principal prosecutor of the State or of the political subdivision, is personal to him, and may not be delegated. `[T]he authority to apply for court orders is to be narrowly confined ... to those responsive to the political process, a category to which the ... [Assistant State's Attorney] obviously does not belong.' United States v. Giordano, 416 U.S. at 520, 94 S.Ct. at 1829, 40 L.Ed.2d at 356." (384 A.2d at pages 111-112.)
Our own Sister Court of the Second District, in State v. McGillicuddy, 342 So.2d 567 (Fla. 2nd DCA 1977), considered a situation wherein the application for the interception of wire communications consisted of an affidavit by an investigator in the state attorney's office, which application concluded with the words "authorized by", followed by the signature of the state attorney. The trial court interpreted the federal statute to mean that one of the statutorily described officers had to physically appear before the judge as an applicant to obtain the wiretap order. The issue before the court was not, therefore, identical to that sub judice. However, the court appears to have simply assumed that the "principal prosecuting attorney" authorized by the federal statute eliminated assistants. The court said:
"The parties agree that Congress in the passage of Title III of the Omnibus Crime Control and Safe Streets Act preempted the field of the interception of *715 wire communications under its power to regulate interstate communications. State v. Farha, 218 Kan. 394, 544 P.2d 341 (1975). The states are also permitted to regulate wiretaps providing their standards are at least as strict as those set forth in the federal act. State v. Siegel, 13 Md. App. 444, 285 A.2d 671 (1971). Thus, in order to reach our conclusion, it is necessary to first look at the applicable federal statutes.
* * * * * *
"It is evident that the use of wiretaps infringes upon the individual's right to privacy. Therefore, the federal statute establishes procedures which are designed reasonably to protect the right of privacy, while insuring that necessary wiretaps may be used for investigative purposes. "The purpose of the procedure set forth in 18 U.S.C. § 2516(2) is to place the responsibility for authorization in a specific and identifiable person who is answerable to the people. United States v. Lanza, 341 F. Supp. 405 (M.D.Fla. 1972). Under the statute, it must be clear who has authorized and set into motion the application for wiretap. Florida has implemented the congressional intent by specifying that a state attorney may be an authorizing official. [footnote omitted]" (342 So.2d at pages 568-569)
The court concluded:
"Therefore, we hold that it was unnecessary for the state attorney to apply for the wiretap order. His written authorization for the application sufficed for purposes of the applicable, federal and state statutes. Contra, State v. Farha, supra. [218 Kan. 394, 544 P.2d 341]" (342 So.2d at page 570)
In a footnote, the author of the McGillicuddy opinion observed:
"In State v. Angel, 261 So.2d 198 (Fla. 3d DCA 1972), our sister court held that an assistant state attorney could authorize an application for a wiretap under Sec. 934.07. However, it appears that the question of whether this would meet the standards of the underlying federal legislation was not argued." (342 So.2d at page 569)
It is clear, therefore, that our sister court agreed with the Supreme Court of Kansas as to the identity of the officer required to make application for a wiretap order but disagreed that it was necessary for that officer to physically appear before the judge to whom application is made. As above stated, that is not an issue sub judice.
Based upon a reading of the federal statute and a consideration of the authorities above cited we are constrained to conclude that notwithstanding the construction which has been placed upon our own state statute by other District Courts of Appeal and by the Supreme Court of Florida, the applicable federal statute is preemptive and a careful reading of that statute can only lead to the conclusion that the "principal prosecuting attorney" authorized by 18 U.S.C. § 2516(2) to make application for an order authorizing or approving the interception of wire or oral communications cannot be construed to include an assistant state attorney. It necessarily follows, and we so hold, that the motion to suppress the fruits of the wiretaps sub judice should have been granted on the ground that the authorizing order was violative of the federal statute and appellants' objection to the introduction of that evidence at trial should have been sustained on the same basis. Such illegally obtained evidence is not admissible.[17]
The judgment and sentence here appealed by Otis Daniels is reversed, and the case is remanded for a new trial.
The judgment and sentence here appealed by Lula Bell Phillips is reversed. No substantive evidence having been adduced against her other than the tapes of the telephone conversations which we hold were admitted in error, she is ordered and discharged under such judgment and sentence.
REVERSED.
*716 SMITH, J., concurs.
BOOTH, J., concurs in part and dissents in part.
BOOTH, Judge, concurring in part and dissenting in part.
I dissent from the holding that the signature of an Assistant State Attorney authorizing the application for a wiretap renders the wiretap invalid, and the evidence obtained thereunder inadmissible. As to the remainder of the opinion, I concur.
The question has been determined in State v. Angel, 261 So.2d 198 (Fla. 3d DCA 1972); affirmed, 270 So.2d 715 (Fla. 1972), that for the purpose of Florida law, an Assistant State Attorney is qualified to authorize an application for a wiretap order. To like effect is State v. Berjah, 266 So.2d 696, 698 (Fla. 3d DCA 1972) holding that the order of the court requiring suppression of wiretap evidence could not be based on the fact that the application for wiretap authorization was signed by the Assistant State Attorney. In Mitchell v. State, ___ So.2d ___ (Fla. 1st DCA 1979), this Court approved an application for postponement of serving inventories under the wiretap statute authorized by an Assistant State Attorney rather than the State Attorney.
The federal law does not require a contrary result or mandate the invalidity of Florida Statute § 934.07. Cases from Kansas and other states striking statutes of those states or otherwise interpreting their laws vis-a-vis the federal act to disallow applications signed by Assistant Attorneys General or Assistant State Attorneys, are not controlling, nor are their rationales persuasive. In State v. Miller, 313 So.2d 656, 657 (Fla. 1975), the Florida Supreme Court held that under Florida Statute § 27.324, as conformed to the Florida Constitution which became effective January 1, 1973, Assistant State Attorneys "now serve as the alter egos of the state attorney appointing them and ... are given by Section 27.324 `all powers of state attorneys,' which includes the power to sign informations... ." The court stated:
"Section 27.324, F.S., conforms to Section 17, Article V, State Constitution, which became effective January 1, 1973. Section 17 of Article V contains no limitations on the Legislature affecting its power to grant assistant state attorneys authority to sign informations, as had been the construction given Section 10, Article I, and Section 15 of Article V of the 1885 Florida Constitution in State ex rel. Ricks v. Davidson (1935), 121 Fla. 196, 163 So. 588. This appears so because when said sections were construed to require signature of the state attorney on an information as a condition precedent to filing, the Governor appointed assistant state attorneys while now under Section 17, Article V the state attorneys pursuant to authorization of law appoint them. They now serve as the alter egos of the state attorney appointing them and to consistently carry out this nonconflicting relation are given by Section 27.324 `all powers of state attorneys,' which includes the power to sign informations. When an assistant state attorney signs and files a felony information it is tantamount to the state attorney himself filing it under present law." (e.s.)
Title 18, § 2516(2), U.S.C., provides in pertinent part as follows:
"The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge ... for an order authorizing or approving the interception of wire or oral communications, may apply to such judge for . . an order authorizing, or approving the interception of wire or oral communications... ."
The intent of Congress in enacting the foregoing provision is not to designate a particular officer by name or title, but to insure the centralization of policy decisions of this type. What officer or officers within the State are designated by the State to apply for authorization for wiretap is a matter of State law. This is the holding of the Fifth Circuit Court of Appeals in U.S. v. Pacheco, *717 489 F.2d 554, 562 (CA 5th 1974).[1] That case specifically considers the Florida statute here in question and holds valid an intercept instituted pursuant to an order issued on application of the Governor of Florida. The defendants in that case argued that the authorization was illegal because not within the language of § 2516(2) in that the Governor does not qualify as "the principal prosecuting attorney of any State," etc. The court in upholding the authorization and the wiretap and evidence obtained thereunder, stated (489 F.2d at 562):
"Florida has chosen to implement the requirement in the federal statute that the principal prosecuting attorney make application for the wiretap order, by designating, among others, the Governor of the state to authorize initial applications for interceptions .. . Appellants contend, however, that the chief executive officer of the state is not within the contemplation of the federal statute authorizing the `principal prosecuting attorney' of the state to make initial approval. The purpose of including this requirement in the federal statute was not to designate a particular officer by name or title but to ensure the centralization of policy decisions of this type at the highest practicable levels, preferably on a statewide basis. In the words of the Senate report explaining section 2516(2):
In most States the principal prosecuting attorney of the State would be the attorney general. The important question, however, is not name but function. The intent of the proposed provision is to provide for the centralization of policy relating to statewide law enforcement in the area of the use of electronic surveillance in the chief prosecuting officer of the State. Who that officer would be would be a question of State law. Where no such office exists, policymaking would not be possible on a statewide basis; it would have to move down to the next level of government." (e.s.)
In Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (1975), the court upheld the validity of a Massachusetts statute which allows special designations of Assistant Attorneys General and Assistant District Attorneys to authorize applications for wiretap.[2] The court upheld the validity of the wiretaps in that particular case authorized by an Assistant District Attorney, holding:
"The defendants concede that to require the personal appearance of a State's principal prosecuting attorneys before the issuing judge in all instances would impede enforcement of the State criminal law; they do not assert that § 2516(2) mandates such a personal appearance . . Rather, the defendants contend that `to apply' means that the district attorney, if he is the principal prosecuting attorney in a case, must affirmatively demonstrate some familiarity with the application, thereby providing an indication that he reviewed the merits of the particulars of the application.
Emphasizing the term that the district attorney must apply, the defendants submit that a delegation of authority to the assistant district attorney empowering him to apply for the warrant is improper and in conflict with the Federal enabling section; that as a consequence the State statute is invalid in this regard; and that since the warrants issued in these cases were applied for by an assistant district attorney, the warrants are invalid. Hence, if the defendants' position is correct, all evidence seized thereunder would be suppressed ...
We do not think that the term `apply' in § 2516(2) is to be so narrowly read as the defendants suggest. We base our conclusion on the statutory language of Title III, the legislative history of the act, and *718 the reasoning of certain other decisions which have construed this section...
The Senate Report, which analyzes section by section the provisions of Title III, with respect to § 2516(2) states: `Paragraph (2) provides that the principal prosecuting attorney of any State or the principal prosecuting attorney of any political subdivision of a State may authorize an application to a State judge of competent jurisdiction, as defined in section 2510(9), for an order authorizing the interception of wire or oral communications. The issue of delegation by that officer would be a question of State law. In most States, the principal prosecuting attorney of the State would be the attorney general. The important question however, is not name but function ... Who that officer would be would be a question of State law.'" (emphasis theirs)
The opinion states, by way of guidance to state prosecuting attorneys and judges that special designations to Assistant Attorneys General or Assistant District Attorneys be on a case-by-case basis only.
In U.S. v. Fury, 554 F.2d 522 (CA 2nd 1977)[3] the court upheld the validity of wiretap applications signed by the Chief Assistant District Attorney. In that case there was a general designation by the District Attorney of Nassau County in New York which stated that the District Attorney was out of the State, and proceeding under a New York statute, he designated "in order of secession," Edward Margolin and another Assistant District Attorney to perform his functions. The court stated:
"Fury also contends that CPL § 700.05 conflicts with 18 U.S.C. § 2516(2) in that the New York statute impermissibly permits delegation of the authority to seek eavesdropping orders to a subordinate in the absence or disability of the district attorney. He claims that Congress did not contemplate that any person other than the attorney general or county district attorney himself would have such authority. As one court which rejected this argument stated, `Congress simply would not have intended that local wiretap activity would be completely suspended during the absence or disability of the official specifically named [in § 2516(2)].' State v. Travis, 125 N.J. Super. 1, 308 A.2d 78, 82 (1973), aff'd, 133 N.J. Super. 326, 336 A.2d 489 (1975)."
In U.S. v. Bowdach, 366 F. Supp. 1368 (D.C.S.D.Fla. 1973),[4] a case interpreting § 2516(1) of Title 18 U.S.C., which requires that federal wiretap authorizations be by "The Attorney General or any Assistant Attorney General specially designated by the Attorney General ...," the court upheld the validity of a wiretap authorization application signed by in fact a Deputy Assistant Attorney General who signed the name of his superior, an Assistant Attorney General. The court found however, that the Attorney General himself had reviewed the file and initialed a memo with regard to the requested authorization. The court held:
"In sustaining against attack what appears on the surface to be a departure from the requirements of § 2518, it is essential to consider the policies underlying Title III [of Omnibus Crime Act a/k/a Title 18 U.S.C.]. Title III was designed to achieve a balance between the need for effective law enforcement techniques to battle the increasing sophistification of organized crime and the incursions upon individual privacy resulting from the utilization of those techniques. Congress sought to abide by the constitutional requirements set forth by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) and Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). In those cases the Court delineated threshold considerations that would afford a minimum standard of constitutionality; interposition of a neutral and detached judicial authority, existence of probable cause, manifestation of particularity, minimization as to time and seizure, exercise of dispatch and notice. *719 Congress apparently desired to go beyond these guideposts and establish the additional requirements of centralization and uniformity of policy-making. § 2518 was designed to affix the lines of responsibility as a corollary to promoting a uniform policy in wire interception. Thus, although considerations of centralization and uniformity of decision-making are adjuncts to the protection of privacy, those considerations do not reach the level of constitutional status. This is not to suggest, however, that blatant disregard for the statutory-based mandates of Title III will be countenanced... ." (e.s.)
Under the foregoing authorities, Florida Statute § 934.07 is a proper implementation of Title 18, § 2516(2), and provides standards for protection of Fourth Amendment rights equivalent to, and as strict as, those of the Federal Act.
I would affirm the convictions below.

ON PETITION FOR REHEARING
PER CURIAM.
The State's petition for rehearing calls to our attention that a panel of this court, in Epps v. State, 354 So.2d 441 (Fla. 1st DCA 1978), directly passed on and rejected, although without discussion in the opinion, a contention that Title 18 U.S.C. Section 2516 is preemptive of Florida law which otherwise permits any assistant state attorney to make applications for orders authorizing or approving interception of wire and oral communications. Although a majority of this panel consider that the federal preemption question was not raised or decided by the Supreme Court in Angel v. State, 270 So.2d 715 (Fla. 1972), all agree that the question was raised and briefed in Epps, and that there is a conflict in result, if not in citable precedent. This case and Epps concern the same wiretap. Whether the conflict is such as to create Supreme Court jurisdiction is not our concern; rather our concern is that this Court has rendered decisions we recognize as inconsistent on the same facts.
Were the Epps opinion of precedental value, and of importance to anyone except Epps himself, to whom we can here give no relief, Judges Robert Smith and Larry G. Smith would expressly recede from Epps. At any rate they adhere to the opinion of Judge Boyer in this case. Judge Booth adheres to her dissent as filed. Accordingly, the State's petition for rehearing will be denied; nevertheless, we certify to the Supreme Court that this decision passes on a question of great public interest, namely:
Does Title 18 U.S.C. Section 2516, requiring application by the "principal prosecuting attorney" for an order authorizing or approving the interception of wire or oral communications, preclude the exercise of that power by a general class of prosecutors who are assistant state attorneys in Florida?
Petition for rehearing DENIED.
ROBERT SMITH, Acting C.J., and LARRY SMITH, J., concur.
BOOTH, J., specially concurs.
BOOTH, Judge.
I concur in the denial of the petition for rehearing.
NOTES
[1] The State recited in its brief that it accepted the facts as contained in the statement of facts set forth in appellants' brief.
[2] No substantive evidence was adduced against appellant Daniels other than the taped telephone conversations.
[3] Only one tape relating to appellant Phillips was introduced into evidence at the trial.
[4] The third and fourth points related only to the trial of appellant Daniels and can therefore have no relevancy to appellant Phillips because she plead nolo contendere and was not therefore involved in the trial before the jury.
[5] See 13 Fla.Jur., Evidence, § 311 and authorities therein cited.
[6] No objection was made at the trial nor here regarding the last instruction above quoted.
[7] Whether the trial court erred in allowing Investigator McClain to testify as to his interpretation of the phone conversations.
[8] Whether the affidavit in support of the order authorizing the interceptions sufficiently alleged that reasonable investigative techniques had been tried but had failed.
[9] 18 U.S.C. § 2518(1)(c) also contains the same requirement as to normal investigative procedures.
[10] See also United States v. Kahn, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); United States v. Steinberg, 525 F.2d 1126 (2d Cir.1975); United States v. James, 161 U.S.App. D.C. 88, 494 F.2d 1007 (1974); United States v. Pacheco, 489 F.2d 554 (5th Cir.1975).
[11] State v. Barnett, 354 So.2d 422 (Fla. 2nd DCA 1978), and authorities therein cited.
[12] For a case involving the same wiretap denying a motion to suppress because of delay in service of the post-interception inventory required by F.S. 934.09 see Hicks v. State, 359 So.2d 475 (Fla. 1st DCA 1978). See also Eppes v. State, 354 So.2d 441 (Fla. 1st DCA 1978).
[13] Whether an Assistant State Attorney can authorize an application for a wiretap.
[14] Affirmed by a per curiam opinion by the Supreme Court of Florida, Angel v. State, 270 So.2d 715 (Fla. 1972).
[15] 18 U.S.C. § 2510, et seq.
[16] Title III, 18 U.S.C. § 2516, et seq.
[17] Horn v. State, 298 So.2d 194 (Fla. 1st DCA 1974). For a discussion as to the distinction between a state attorney, a constitutional officer, and an assistant state attorney, appointed by a state attorney, see State ex rel. Christian v. Austin, 302 So.2d 811 (Fla. 1st DCA 1974).
[1] Cert. denied 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975).
[2] Mass.Gen.L., Chap. 272, § 99, FL:

"The attorney general, any assistant attorney general specifically designated by the attorney general, any district attorney or any assistant district attorney specially designated by the district attorney may apply ex parte to a judge of competent jurisdiction for a warrant to intercept wire or oral communications ..."
[3] Cert. denied 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1978).
[4] Affirm 501 F.2d 220 (1974), cert. denied 420 U.S. 948, 95 S.Ct. 1331, 43 L.Ed.2d 426 (1975).